**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **ANTONIO MARTINEZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    Civil Action No.  3:06-CV-257-MHT |
| | ) |
| **NURSE STEWART, et. al.,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**DEFENDANT NURSE STEWART'S SPECIAL REPORT**</u>

COMES NOW Defendant Nurse Linda Stewart and submits her Special Report to the Court.

**INTRODUCTION**

On March 20, 2006, Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama.  On March 29, 2006, this Court ordered Nurse Stewart to file a Special Report and Answer within forty days of the date of the order.

The Plaintiff was arrested on January 9, 2006, on a charge of Robbery in the First Degree.  (Exhibit A, Inmate File of Antonio Martinez, "Inmate File," Inmate Booking Sheet dated January 9, 2006, pp. 2 and 3.)  He was booked into the Lee County Detention Facility that same day.  (Ex. A.)  The Plaintiff is awaiting trial in these matters and is, therefore a pre-trial detainee.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff's allegations are (1) that the Doctor told him that he did not need surgery and then told him that when he got out he needed to have surgery; (2) that he has not received pain medication; and (3) that he was moved from the medical dorm to general population.  (Plaintiff's Complaint, pp. 2-3.)  The Plaintiff requests that the Court "make it possible to get [his] operation

as soon as possible" and to have "the ones who are violating [his] rights to pay for the bills, and have them emburse [sic] [him] for pain and suffering, and any bills incurred [sic] in pursuit of justice." (Plaintiff's Complaint, p. 3.)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Nurse Stewart denies the allegations made against her by Plaintiff as being untrue and completely without basis in law or fact. She denies that she acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit B, Declaration of Nurse Linda Stewart, "Stewart decl.," ¶ 4.) Nurse Stewart raises the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. Nurse Stewart reserves the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotion well-being. (Ex. B, Stewart decl., ¶ 5; Exhibit C, Declaration of Cary Torbert Jr., "Torbert decl.," ¶ 3.) Medical care rendered to inmates in the Lee County Detention Center is delivered under the direction of a licensed health care provider. (Ex. B, Stewart decl., ¶ 6; Ex. C, Torbert decl., ¶ 4.) No health care personnel or Detention Center officer or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services. (Ex. B, Stewart decl., ¶ 7; Ex. C, Torbert decl., ¶ 5.) Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively. (Ex. B, Stewart decl., ¶ 8; Ex. C, Torbert

decl., ¶ 6.)   Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.  (Ex. B, Stewart decl., ¶ 9; Ex. C, Torbert decl., ¶ 7.)

It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time.  (Ex. B, Stewart decl., ¶ 10; Ex. C, Torbert decl., ¶ 8.)  Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services:

a.    <u>Verbal Request</u>:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

b.    <u>Written Request</u>:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.

(Ex. B, Stewart decl., ¶ 11; Ex. C, Torbert decl., ¶ 9.)   Requests for medical treatment are accepted by members of the Detention Center staff at any time.  (Ex. B, Stewart decl., ¶ 12; Ex. C, Torbert decl., ¶ 10.)   When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request is to notify the Shift Supervisor of the inmate's request.  It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner.  Any doubt as to whether an actual need exists for medical treatment is to be resolved in favor of the inmate and medical treatment will be offered.  (Ex. B, Stewart decl., ¶ 13; Ex. C, Torbert decl., ¶ 11.)  Medical requests of an emergency nature are to be handled immediately.  (Ex. B, Stewart decl., ¶ 14; Ex. C, Torbert decl., ¶ 12.)  As part of the booking process, inmates are informed of the methods by which they may maintain medical treatment during the booking process.  (Ex. B, Stewart decl., ¶ 15; Ex. C, Torbert decl., ¶ 13.)

The Detention Center nurses, under the direction of the Detention Center Administrator,

are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Center. (Ex. B, Stewart decl., ¶ 16; Ex. C, Torbert decl., ¶ 14.) All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Center official. Should the physician request, a Detention Center officer will be present for any and all examinations the treating physician deems appropriate. (Ex. B, Stewart decl., ¶ 17; Ex. C, Torbert decl., ¶ 15.) Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates. All inmates are required to pay a fee for non-emergency treatment. Inmates will not be denied medical treatment. When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received. (Ex. B, Stewart decl., ¶ 18; Ex. C, Torbert decl., ¶ 16.)

Nurse Stewart followed Dr. McFarland's orders with regard to the Plaintiff's medical care. In fact, per the policy of the Lee County Sheriff's Office, Nurse Stewart always follows the instructions of Dr. McFarland on all medical issues. (Ex. B, Stewart decl., ¶ 19 Ex. C, Torbert decl., ¶ 17.)

On January 10, 2006, the Plaintiff submitted a request to see a nurse or doctor concerning his hernia, and therefore Nurse Stewart examined him and set him up an appointment to see Dr. McFarland. (Ex. B, Stewart decl., ¶ 20.; Exhibit 1 to Stewart decl., Inmate Medical File of Antonio Martinez, "Medical File," Inmate Request Slip dated January 10, 2006; Exhibit 2 to Stewart decl., Medical File, Notes dated January 13, 2006.) The Plaintiff stated that he needed surgery and that he was "under [Nurse Stewart's] care now." Nurse Stewart noted that the

Plaintiff needed to see Dr. McFarland to have his hernia put back in and placed him in medical observation.  (Ex. B, Stewart decl., ¶ 20; Ex. 2.)  Nurse Stewart also ordered Motrin twice a day for the Plaintiff.  (Ex. B, Stewart decl., ¶ 20; Ex. 2; Exhibit 3 to Stewart decl., Medical File, Medication Administration Record dated January 13, 2006.)

The Plaintiff saw Dr. McFarland the next day, and Dr. McFarland noted that the Plaintiff had had a left inguinal hernia for one year.  The Plaintiff stated that he had spent two days in the hospital in Atlanta with the hernia, but he did not have surgery.  Dr. McFarland noted that the hernia was easily reduced, that the testicle had no hydrocele, that his abdomen was soft and nontender with normal bowel sounds, and that the Plaintiff was not having any respiratory distress.  (Ex. B, Stewart decl., ¶ 21; Exhibit 4 to Stewart decl., Medical File, Notes dated January 18, 2006.)  Dr. McFarland noted that the Plaintiff did not need to have surgery at that time.  Dr. McFarland noted that, if the hernia was not able to be reduced or if he had any vomiting, surgery would be needed.  Otherwise, any surgery would be merely elective.  Dr. McFarland did not prescribe any medication or treatment for the Plaintiff.  (Ex. B, Stewart decl., ¶ 22; Ex. 4.)

On January 24, 2006, the Plaintiff requested medication.  Nurse Stewart noted that Dr. McFarland did not prescribe any pain medication but did give the Plaintiff Motrin. (Ex. B, Stewart decl., ¶ 23; Exhibit 5 to Stewart decl., Medical File, Inmate Request Slip dated January 24, 2006.)  On January 25, 2006, the Plaintiff again requested pain medication.  Nurse Stewart noted that he had a follow-up appointment scheduled with Dr. McFarland.  (Ex. B, Stewart decl., ¶ 24; Exhibit 6 to Stewart decl., Medical File, Inmate Request Slip dated January 25, 2006.)

On January 26, 2006, the Plaintiff was caught by Corporal Wiltsie lifting a water bag in an attempt to try to make his hernia come out.  Ex. B, Stewart decl., ¶ 25; Exhibit 7 to Stewart

decl., Medical File, Notes dated January 31, 2006; Exhibit D, Inmate File of Antonio Martinez, "Inmate File," Special Report dated January 26, 2006.)  Corporal Wiltsie reported this situation to Nurse Stewart, who relayed it to Dr. McFarland.  (Ex. B, Stewart decl., ¶ 25; Ex. 7.)  Dr. McFarland examined the Plaintiff on January 31, 2006.  Dr. McFarland noted that there were no nodules within the testicles, no redness, and no swelling.  He also noted that the Plaintiff's abdomen was benign.  Dr. McFarland further noted that the Plaintiff's claimed tenderness seemed to be "dramatic" rather than "true tenderness."  (Ex. B, Stewart decl., ¶ 25; Ex. 7.)  Dr. McFarland stated that the hernia is not "a problem requiring any attention at this time" and that "nothing need[ed] to be done about the hernia at this time."  (Ex. 7.)  Dr. McFarland did state that the Plaintiff could use over-the-counter antifungal medication for a fungal infection on his right foot.  (Ex. 7.)

The Plaintiff sent another request form regarding his hernia and asking for fungus cream. (Exhibit 8 to Stewart decl., Medical File, Inmate Request Slip dated February 6, 2006.)  Nurse Stewart responded that Dr. McFarland was aware of the hernia and if it comes out he may see the doctor.  Nurse Stewart also gave him cream for his foot.  (Ex. 8.)  The Plaintiff then sent another request form asking for medication for his feet and hernia.  (Exhibit 9 to Stewart decl., Medical File, Inmate Request Slip dated February 28, 2006.)  Nurse Stewart again gave the Plaintiff Motrin and anti-fungal cream.  (Ex. 9.)

On March 8, 2006, the Plaintiff sent a request to see the doctor.  (Exhibit 10 to Stewart decl., Medical File, Inmate Request Slip dated March 8, 2006.)  Nurse Griffith examined the Plaintiff on March 10, 2006.  (Ex. 10; Exhibit 11 to Stewart decl., Notes dated March 10, 2006.) Nurse Griffith noted that there was no swelling, pouch, or indention.  (Ex. 11.)  Nurse Griffith gave the Plaintiff Motrin and set him up to see Dr. McFarland.  (Ex. 11.)  On March 14, 2006,

Dr. McFarland examined the Plaintiff. (Exhibit 12 to Stewart decl., Medical File, Notes dated March 14, 2006.) Dr. McFarland placed the hernia back in and noted that the testicles were nontender. (Ex. 12.) He noted that the hernia can be manually reduced without difficulty and that surgery was not needed. (Ex. 12.) Dr. McFarland did not order or recommend any medication or treatment for the Plaintiff. (Ex. 12.)

On March 31, April 6, April 9, and April 10, 2006, the Plaintiff requested pain medication and was given Tylenol or Motrin. (Exhibit 13 to Stewart decl., Medical File, Request dated March 31, 2006; Exhibit 14 to Stewart decl., Medical File, Inmate Request Slip dated April 6, 2006; Exhibit 15 to Stewart decl., Medical File, Inmate Request Slip dated April 9, 2006; Exhibit 16 to Stewart decl., Medical File, Inmate Request Slip dated April 10, 2006.) On April 14, 2006, the Plaintiff submitted a request for Motrin. (Exhibit 17 to Stewart decl., Medical File, Inmate Request Slip dated April 14, 2006.) Nurse Griffith responded to the Plaintiff that he could obtain Tylenol or Motrin from whoever was passing out medications because he was authorized on the medication books to receive either. (Ex. 17.) On April 18, 2006, the Plaintiff requested medication and to see the doctor. (Exhibit 18 to Stewart decl., Medical File, Inmate Request Slip dated April 18, 2006.) Nurse Stewart ensured that the Plaintiff received Motrin and that he was set up to see Dr. McFarland. (Ex. 18.) On April 25, 2006, Dr. McFarland saw the Plaintiff and noted that the Plaintiff's hernia was still stable. (Exhibit 19 to Stewart decl., Medical File, Notes dated April 25, 2006.)

Dr. McFarland has never recommended that the Plaintiff have surgery or have any pain medication other than Tylenol or Motrin. Further, Dr. McFarland did not recommend that the Plaintiff remain in medical isolation. Had Dr. McFarland recommended a surgery for the Plaintiff, Nurse Stewart would have taken the steps to set this surgery up for the Plaintiff. Had

Dr. McFarland recommended that the Plaintiff receive any other type of pain medication, Nurse Stewart would have given the Plaintiff that medication. Had Dr. McFarland recommended that the Plaintiff remain in medical isolation, Nurse Stewart would have followed that recommendation.

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon. (Ex. C, Torbert decl., ¶ 18.) All inmates are provided access to a Lee County Detention Center Inmate Handbook. A copy of this handbook is placed in each cellblock for inmates to review whenever they wish. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision. (Ex. C, Torbert decl., ¶ 19.)

The Plaintiff has failed to exhaust his administrative remedies through the grievance procedure at the Lee County Detention Center. (Ex. C, Torbert decl., ¶ 20.) Major Torbert has never received a grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint. Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to Major Torbert if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not done so. (Ex. C, Torbert decl., ¶ 21.) The Plaintiff was aware of the method for submitting grievances. All properly submitted grievances are answered, and a copy is placed in the inmate's inmate file. Upon Major Torbert's review of the Plaintiff's inmate file, there are no grievances concerning the allegations made the basis of his

Complaint.  (Ex. C, Torbert decl., ¶ 22.)  Furthermore, Nurse Stewart has never received a written grievance from the Plaintiff concerning the allegations made the basis of his Complaint.  (Ex. B, Stewart decl., ¶ 37.)

## II.    LAW

### A.    All claims by Plaintiff against Nurse Stewart in her official capacity must fail based on Eleventh Amendment immunity and because she is not a "person" under 42 U.S.C. § 1983.

Plaintiff's claims against Nurse Stewart in her official capacity are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Nurse Stewart in her official capacity should therefore be dismissed because she is not a "person" under § 1983, and therefore claims against Nurse Stewart in her official capacity fail to state a claim upon

which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3.

**B.     Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.     Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility.  Despite the availability of a grievance procedure at the Lee County Detention Facility, the Plaintiff did not file a grievance regarding the incident made the basis of his Complaint or utilize the appeals process at the Lee County Detention Facility. Second, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to ALA. CODE § 41-9-60.  The Sheriff of Lee County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster, 116 F.3d at 1429. Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former §

1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA);

Booth v. Churner, 532 U.S. 731, 741 (2001) (concluding that the exhaustion of administrative

remedies is now mandatory and courts cannot excuse exhaustion).

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002).  Because

Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint

is due to be dismissed.

> **C.    Nurse Stewart is entitled to summary judgment based on qualified immunity because nothing in her conduct crossed a "bright line" contour of clearly established constitutional law.[1]**

Nurse Stewart was acting within her discretionary authority as Jail Nurse of Lee County

during all times relevant to Plaintiff's Complaint because all her actions were taken in the

furtherance of her job duties.  See, e.g., Holloman ex rel. Holloman v. Harland, 370 F.3d 1252,

1267 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and

shown that he was acting within his discretionary authority, the threshold inquiry a court must

undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.

Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light

most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The

---

[1] Alternatively, even absent the qualified immunity defense, Nurse Stewart did not violate the Plaintiff's constitutional rights as set forth in this section.

second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that Nurse Stewart had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Nurse Stewart was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

### 1.    The Plaintiff's Constitutional Rights were not violated.

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that the Defendants were deliberately indifferent to a serious medical condition.  Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> In our circuit, a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.

Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks

omitted) (modification in original).  In the instant case, the Plaintiff did not have a "serious" medical need because the physician Dr. McFarland did not determine that he had a condition that mandated treatment.  Dr. McFarland did not recommend any treatment for the Plaintiff's hernia. Accordingly, because the evidence shows that the Plaintiff did not have a serious medical need, his medical claim must fail.

A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Farmer v. Brennan, 511 U.S. 825, 845-47 (1994).  Mere negligence does not suffice to prove deliberate indifference.  Farmer, 511 U.S. at 835 ("Deliberate indifference describes a state of mind more blameworthy than negligence.").  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  No deliberate indifference was shown by Nurse Stewart because Nurse Stewart followed Dr. McFarland's orders at all times with regard to the Plaintiff's medical care.  She set the Plaintiff up for appointments to see Dr. McFarland when the Plaintiff requested an appointment, and she ensured that the Plaintiff received Motrin or Tylenol upon his request. Clearly, Nurse Stewart was not deliberately indifferent, and therefore the Plaintiff's medical claim must fail.

Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown.  Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).  An inmate does not have a right to a *specific* kind of treatment.  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality]*

*obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Hamm v. DeKalb County, 774 F.2d 1567, 1574-75 (11th Cir. 1985) ("This evidence shows that Hamm received significant medical care while at the jail. Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

In Faison, the inmate complained that the jail doctor did not refer him to a physical therapist even though the orthopedic specialist had recommended it.  The doctor responded that the orthopedist's comment was just that the plaintiff should see a physical therapist *if* one was available.  The Court held that, "although Faison might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim."  Faison v. Rosado, 129 Fed. Appx. 490, 492 (11th Cir. 2003); see also Adams v. Poag, 61 F.3d 1537 (11th Cir. 1995) (question of medical judgment cannot make out a basis for imposing liability under § 1983).  The Court further stated:  "Even if physical therapy was a part of a more aggressive

treatment plan, Dr. Monserrate's failure to refer Faison to a physical therapist may amount to negligence but not to a cognizable constitutional claim."

In the instant case, the evidence is clear that the Plaintiff was seen by Dr. McFarland or the Nurses upon each request and was given medication upon each request.  Dr. McFarland's orders were followed at all times.  Clearly, Nurse Stewart was not subjectively deliberately indifferent – she had a good faith reason for all her actions because she was following the instructions of Dr. McFarland.  Simply because the Plaintiff desired a different treatment than that prescribed by Dr. McFarland and carried out by Nurse Stewart cannot rise to the level of a constitutional violation.

In <u>Meloy v. Bachmeier</u>, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director for failing to provide him with a positive air pressure machine needed to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations.  "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions."  302 F.3d at 847 <u>citing</u>, <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995).  Further, the <u>Meloy</u> court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription."  <u>Id.</u> <u>citing</u>, <u>Zentmyer v. Kendall County</u>, 220 F.3d 805, 812 (7th Cir. 2000).  Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision.  Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849; <u>see also</u> <u>Brownell v. Figel</u>, 950 F.2d 1285, 1291-92 (3d Cir. 1991) (granting summary judgment to police officer after *rejecting* plaintiff's contention that "the due process

clause requires police to second guess a doctor's diagnosis in all instances where intoxicated accident victims display aberrant behavior."); Rowe v. Rivera, 2000 WL 1507447, *6 (D.N.H. 2002) ("The defendants' reliance on the opinions of the doctors who examined Rowe after Dr. Hogan recommended surgery and who believed that his condition was not urgent does not constitute deliberate indifference to a substantial risk to Rowe's health."); Rosas v. Lane, 1987 WL 15762, *2 (N.D. Ill. 1987) ("Loathe to second-guess the judgment of medical health care professionals, courts rarely find violations of the Eighth Amendment in disputes between inmates and medical staff as to the appropriateness of a diagnosis or the adequacy of treatment actually rendered."); Ellison v. Scheipe, 570 F. Supp. 1361, 1363-64 (E.D. Pa. 1983) ("[P]rison officials cannot be required to second guess the medical judgment of the physician."). This Court reached a similar conclusion in Shepard v. Stidham, 502 F. Supp. 1275 (M.D. Ala. 1980). In Shepard, the Court held that the prison officials acted reasonably in reliance on the recommendation of the physician, and therefore no deliberate indifference was shown. Id. at 1281-1282

Similarly, in the instant case, the evidence shows that Plaintiff was treated by the Jail Nurse and the Jail Medical doctor for all his medical problems. The evidence shows that Dr. McFarland did not recommend any treatment for the Plaintiff other than Motrin and Tylenol. Nurse Stewart, like the director in Meloy and like the prison officials in Shepard, cannot, and should not, second guess the judgment of Dr. McFarland, a licensed and trained medical doctor. See Fillebrown v. Zettlemoyer, 1996 WL 460051, at *3 (E.D. Pa. 1996) ("[P]rison administrators and the nursing staff of the prison infirmary cannot be found deliberately indifferent for failing to defer to an inmate's judgment about appropriate diagnostic care when it contradicts the recommendations of the treating physician. Since [the] defendants were entitled to rely upon the

recommendations of the treating physician, their conduct did not amount to deliberate indifference.").

The evidence shows that Dr. McFarland's sound medical orders were followed at all times. Because Nurse Stewart acted reasonably upon the recommendations of Dr. McFarland with regard to the Plaintiff, Nurse Stewart in no way violated the Plaintiff's constitutional rights.

Courts in the Eleventh Circuit have examined the issue of whether the failure to provide elective surgery in jail amounts to deliberate indifference and determined that it does not. Very recently, in Reed v. Darbouze, this Court considered a case with almost identical facts to those of the instant case. 2006 WL 508031 (M.D. Ala. March 1, 2006). In Reed, the plaintiff inmate complained that he was not given surgery for his hernia, that he was in severe pain, and that his prescription for Tylenol had run out. This Court noted: "The plaintiff's medical records demonstrate that he has received medical treatment for his hernia on numerous occasions and that he has received pain medication." Id. at *2. The Court further noted. "The plaintiff is quite correct that he did not get surgery for his hernia, but that fact alone does not establish deliberate indifference. He was provided conservative medical treatment for the hernia. His mere desire for a different treatment modality does not establish deliberate indifference." Id. See also Camacho v. Corrections Corp. of America 2006 WL 319277 (S.D. Ga. Jan. 20, 2006) (holding that, where surgery was medically acceptable but not medically necessary, the inmate's not being given surgery for hernia did not meet either the objective or subjective components of the deliberate indifference standard was satisfied because the plaintiff had no serious medical need and no deliberate indifference was shown), Green v. Manning, 692 F. Supp. 1283 (S.D. Ala. 1987) (holding failure to provide plaintiff with elective surgery and failure to provide necessary pain medication was not deliberate indifference).

Because the facts of the instant case are wholly analogous to the facts of the cases cited above where no deliberate indifference was found, it is clear that Nurse Stewart was not deliberately indifferent to the Plaintiff's constitutional rights.

**2.      No clearly established law provided Nurse Stewart with fair warning that her conduct was unlawful.**

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Nurse Stewart with fair warning that her conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In Wilson v. Jones, the Eleventh Circuit held that, where two district courts within the Eleventh Circuit had upheld the Sheriff's policy of blanket strip searches, there was no fair warning that this policy was unlawful for purposes of qualified immunity.  251 F.3d 1340, 1345-46 (11th Cir. 2001).  Similarly, in the instant case, several district courts within the Eleventh Circuit have held that failure to provide elective surgery in jail does not amount to deliberate indifference.  In fact, the very issue presented in this case – whether failure to provide elective

hernia surgery for an inmate constitutes deliberate indifference – has been determined by two district courts in this Circuit. In both cases, the courts held that no deliberate indifference was shown. Accordingly, just as in <u>Wilson</u>, because the district courts in this Circuit have upheld actions identical to those of Nurse Stewart in this case, Nurse Stewart is similarly entitled to qualified immunity.

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided Nurse Stewart with fair warning that her conduct was unlawful. In fact, Nurse Stewart's actions were in conformance with the law of this Circuit. Therefore, Nurse Stewart is entitled to qualified immunity.

### D.    Plaintiff has failed to allege sufficient personal involvement on his claim.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the Nurse Stewart and the constitutional deprivation. <u>Swint v. City of Wadley</u>, 51 F.3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. <u>Zatler v. Wainwright</u>, 802 F.2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that any of the Nurse Stewart was in any way personally involved in any alleged violation of Plaintiff's constitutional rights. The Plaintiff's claims are based on the treatment recommended by Dr. McFarland. All Nurse Stewart did was follow the orders of the licensed physician as she must do. Accordingly, there is no causal connection between any action or inaction on the part of Nurse Stewart and any alleged injury to the Plaintiff.

To the extent that Plaintiff's claims are an attempt to hold the Nurse Stewart liable under a *respondeat superior* theory, his claim must similarly fail. See <u>Monell v. Dep't of Soc. Servs.</u>,

436 U.S. 658, 691 (1978). The Eleventh Circuit in <u>Hartley v. Parnell</u>, 193 F.3d 1263 (11th Cir.

1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally
> participates in the alleged constitutional violation or when there is a causal
> connection between actions of the supervising official and the alleged
> constitutional deprivation. The causal connection can be established when a
> history of widespread abuse puts the responsible supervisor on notice of the need
> to correct the alleged deprivation, and he fails to do so. The deprivations that
> constitute widespread abuse sufficient to notify the supervising official must be
> "obvious, flagrant, rampant and of continued duration, rather than isolated
> occurrences." <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990) (citations
> omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's

improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights."

<u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing <u>Zatler v. Wainwright</u>, 802 F.2d

397 (11th Cir. 1986)). In light of the applicable law, the Plaintiff's allegations are insufficient to

create liability on the part of the Nurse Stewart. As such, Plaintiff's claims are due to be

dismissed.

### E.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most

favorable to the nonmovant. <u>Greason v. Kemp</u>, 891 F.2d 829, 831 (11th Cir. 1990). However, a

plaintiff "must do more than show that there is some metaphysical doubt as to the material

facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Only

reasonable inferences with a foundation in the record inure to the nonmovant's benefit. <u>See</u>

<u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000). "[T]he court should give

credence to the evidence favoring the nonmovant as well as that 'evidence supporting the

moving party that is uncontradicted or unimpeached, at least to the extent that that evidence

comes from disinterested witnesses.'" <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A.

Miller, Federal Practice and Procedure § 2529, p. 299.[2]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Nurse Stewart denies each and every allegation made by Plaintiff Antonio Martinez, in the Complaint.  Nurse Stewart has not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Nurse Stewart respectfully requests that this Honorable Court treat her Special Report as a Motion for Summary Judgment, and grant unto her the same.

Respectfully submitted this 8th day of May, 2006.

> **s/Amanda Kay Morgan**
> AMANDA KAY MORGAN Bar No.  ALL079
> Attorney for Nurse Linda Stewart
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  amorgan@webbeley.com

---

[2] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 8th day of May, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Antonio Martinez
Lee County Detention Center
PO Box 2407
Opelika, AL 36801

**s/Amanda Kay Morgan**
OF COUNSEL